UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CYNTHIA WHITE Individually and as Administrator of the Estate of IRIS LONGSTER, Deceased,<br><br>    Plaintiff,<br><br>  v.<br><br>HENRY COUNTY MEMORIAL HOSPITAL D/B/A CLINTON HOUSE REHABILITATION AND HEALTHCARE CENTER, FRANKFORT REHABILITATION AND HEALTHCARE CENTER, LLC, CLINTON HOUSE REHABILITATION AND HEALTHCARE LLC, CASTLE INDIANA MANAGEMENT LLC,<br><br>    Defendants. | No. 1:24-cv-00843-JRS-MKK |

**Order on Motion to Dismiss**

Cynthia White brings this 42 U.S.C. § 1983 suit on behalf of herself and her deceased mother, Iris Longster, alleging that Defendants violated the Federal Nursing Home Reform Act[1] after Longster died from a urinary tract infection contracted while she was a resident at Defendant Clinton House. (*See generally* Second Am. Compl., ECF No. 50.) Now before the Court is Defendants' motion to dismiss White's Second Amended Complaint for lack of subject-matter jurisdiction

---

[1] White also alleges violations of the 1987 Omnibus Budget Reconciliation Act, the overarching legislation that contains the Federal Nursing Home Reform Act, as well as 42 C.F.R. § 483, the applicable implementing regulations.

and for failure to state a claim.  (ECF No. 58.)  For the reasons outlined below, Defendants' motion is **granted in part** and **denied in part**.

## I.     Legal Standard

"A motion to dismiss under Rule 12(b)(1) tests the jurisdictional sufficiency of the complaint, accepting as true all well-pleaded factual allegations and drawing reasonable inferences in favor of the plaintiffs." *Bultasa Buddhist Temple of Chi. v. Nielsen*, 878 F.3d 570, 573 (7th Cir. 2017) (citing *Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995)).

A 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted challenges "the legal sufficiency of a complaint" under Rule 8(a)'s standards. *Gunn v. Cont'l Cas. Co.*, 968 F.3d 802, 806 (7th Cir. 2020).  Under Rule 8(a), a complaint must contain a short and plain statement showing that the pleader is entitled to relief.  Fed. R. Civ. P. 8(a)(2).  A claim is facially plausible if it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

When considering a motion to dismiss for failure to state a claim, courts "take all the factual allegations in the complaint as true," and draw all reasonable inferences in the plaintiff's favor.  *Iqbal*, 556 U.S. at 678; *Roberts v. City of Chicago*, 817 F.3d 561, 564 (7th Cir. 2016).  A complaint is not required to identify legal theories, and "specifying an incorrect legal theory is not a fatal error." *Rabe v. United Air Lines, Inc.*, 636 F.3d 866, 872 (7th Cir. 2011).  Courts need not, however, accept the truth of

legal conclusions, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law," meaning the Rule's scope is not limited to claims which are "obviously unsupportable." *Neitzke v. Williams*, 490 U.S. 319, 326–27 (1989).

## II. Facts

At the motion to dismiss stage, all well-pleaded factual allegations contained in Plaintiff's Complaint are taken as true. *Iqbal*, 556 U.S. at 678.

Iris Longster was admitted to Defendant Clinton House Rehabilitation and Healthcare Center for long-term skilled nursing services in September of 2020, at the age of 89. The remaining Defendants "owned, managed, operated, supervised, and/or staffed" Defendant Clinton House. (Second Am. Compl. ¶ 17, 19, 21, ECF No. 50.) Longster had a plethora of pre-existing conditions before her admission to Clinton House, and her family informed the nursing home that Longster was prone to urinary tract infections. (*Id.* ¶ 27, 30.) While a resident at Clinton House, Longster suffered at least five falls, as well as a rash and excoriation of her labia in May of 2022, allegedly due to Clinton House staff failing to regularly change her. (*Id.* ¶ 28, 29, 31.) On January 3, 2024, Longster was admitted to the hospital with a UTI and accompanying sepsis. (*Id.* ¶ 32.) She passed away on January 10, 2024, from her infections. (*Id.* ¶ 33.)

## III. Discussion

3

The central issue in this case is whether the relevant provisions of the Federal Nursing Home Reform Act ("FNHRA"), codified at 42 U.S.C. § 1396r, create private rights enforceable under 42 U.S.C. § 1983.

White alleges violations of 42 U.S.C. § 1396r(c)(1)(A)(v)(I) and § 1396r(c)(1)(A)(i). Defendants argue that these FNHRA provisions do not create rights enforceable by individuals under § 1983, but rather lay out the requirements with which nursing homes must comply to receive federal funding. Defendants further contend that White's claims are run-of-the-mill medical malpractice claims governed by Indiana's Medical Malpractice Act ("MMA"); that White is bound by the procedural requirements of the MMA; and that this Court lacks subject-matter jurisdiction over White's claims. (*See generally* Br. Supp. Mot. Dismiss, ECF No. 60.) In response, White argues that the Supreme Court's recent decision in *Health and Hospital Corporation of Marion County v. Talevski*, 599 U.S. 166 (2023), held that FNHRA creates a private right of action enforceable under § 1983; thus, according to White, the Court has subject-matter jurisdiction over this case under its federal question jurisdiction. (Br. Opp'n Mot. Dismiss 11-13, ECF No. 65.)

As a preliminary matter, state administrative exhaustion requirements are not jurisdictional in federal court. "[S]tate law cannot enlarge or contract federal jurisdiction." *Thompson v. Cope*, 900 F.3d 414, 425 (7th Cir. 2018) (quoting *Jarrard v. CDI Telecom., Inc.*, 408 F.3d 905, 909 n.3 (7th Cir. 2005)). Even though "Indiana courts speak in terms of subject-matter jurisdiction when dismissing claims that are subject to the Medical Malpractice Act but have not gone through the medical review

4

panel process," that characterization is irrelevant here, and the Court's analysis proceeds solely under Rule 12(b)(6). *Id.* Thus, the Court considers only whether White has stated a claim upon which relief can be granted.

In addition to their position that FNHRA does not confer a private right of action, the Defendants make several other arguments in support of dismissal; the Court addresses each in turn.

    i.    *Talevski* and § 1983-enforceable rights under FNHRA

In *Talevski,* Gorgi Talevski was a resident of Valparaiso Care and Rehabilitation's nursing home; he suffered from dementia. Talevski's wife brought a § 1983 claim on his behalf, alleging that the nursing home chemically restrained Talevski with psychotropic medication and initiated his forced transfer to a psychiatric hospital 90 minutes away, in violation of FNHRA § 1396r(c)(1)(A)(ii) and § 1396r(c)(2)(A). The *Talevski* defendants argued that these FNHRA provisions were not enforceable under § 1983; the Supreme Court disagreed, holding "that the two FNHRA provisions at issue here do unambiguously create § 1983-enforceable rights. And we discern no incompatibility between private enforcement under § 1983 and the statutory scheme that Congress has devised for the protection of those rights." *Talevski*, 599 U.S. at 172.

In reaching this conclusion, the Court emphasized that federal legislation rarely creates a private right of action, and legislation passed under the Spending Clause (like FNHRA) even less so. *Id.* at 183. Rather, under the Court's precedent, the right must be "unambiguously confer[ed]" by the statute, and "*Gonzaga* [*Univ. v. Doe*, 536

5

U.S. 273 (2002)] sets forth [the] established method for ascertaining unambiguous conferral. Courts must employ traditional tools of statutory construction to assess whether Congress has 'unambiguously conferred' 'individual rights upon a class of beneficiaries' to which the plaintiff belongs." *Id.* (quoting *Gonzaga Univ. v. Doe*, 536 U.S. 273, 283, 285–86 (2002)). In summing up *Gonzaga* and its progeny, the Court explained that "the *Gonzaga* test is satisfied where the provision in question is phrased in terms of the persons benefited and contains rights-creating, individual-centric language with an unmistakable focus on the benefited class." *Id.* (quotations and citations omitted). Meanwhile, the Court has "rejected § 1983 enforceability where the statutory provision contain[ed] no rights-creating language; had an aggregate, not individual, focus; and serve[d] primarily to direct the [Federal Government's] distribution of public funds." *Id.* at 183–84 (quotations and citations omitted).

Analyzing the FNHRA provisions under this standard, the Supreme Court first considered the fact "that both [provisions] reside in 42 U.S.C. § 1396r(c), which expressly concerns '[r]equirements *relating to residents' rights*.'" *Id.* at 184 (quoting 42 U.S.C. § 1396r(c)). Notably, the provisions at issue in the instant case are also contained in this subsection. The Court went on to discuss the fact that both provisions contained rights-creating language, and the caveats and carveouts of both provisions were resident-centric. Ultimately, the Court concluded that §§1396r(c)(1)(A)(ii) and 1396r(c)(2)(A) "satisfy *Gonzaga*'s stringent standard" and create § 1983-enforceable rights. *Id.* at 186. As a final note, the Court explained that,

6

even in the case of unambiguous conferral, a defendant "'may defeat t[he] presumption by demonstrating that Congress did not intend' that § 1983 be available to enforce those rights[;]" Congressional intent may be explicit in the language of the statute or "implicit[], by creating 'a comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983.'" *Id.* (quoting *City of Rancho Palos Verdes, Cal. v. Abrams,* 544 U.S. 113, 120 (2005)). But the *Talevski* Court could discern "no incompatibility between the FNHRA's remedial scheme and § 1983 enforcement of the rights that the unnecessary-restraint and predischarge-notice provisions unambiguously secure." *Id.* at 188.

In arguing that the relevant provisions of FNHRA do not confer individual rights, the Defendants in this case cite to two pre-*Talevski* district court cases, *Terry v. Health & Hospital Corporation*, No. 1:10-cv-00607-DML-JMS, 2012 U.S. Dist. LEXIS 43702, at *4-6, 26-37 (S.D. Ind. 2012), and *Fiers v. La Crosse County*, 132 F. Supp. 3d 1111, 1112 (W.D. Wis. 2015), in which both courts concluded that FNHRA did not confer rights enforceable under § 1983. These cases are neither precedential nor binding on this Court; while Defendants are correct that *Talevski*'s holding was limited to two specific FNHRA provisions, the Supreme Court's analysis is certainly instructive here. In fact, in a subsequent decision holding that a provision of the Medicaid statute does not confer § 1983-enforceable rights, the Supreme Court affirmed that "the statutes at issue in *Talevski* supply the only reliable yardstick against which to measure whether spending-power legislation confers a privately enforceable right." *Medina v. Planned Parenthood S. Atl.*, 145 S. Ct. 2219, 2234

7

(2025). In concluding that the Medicaid statute does not contain "rights-creating" language akin to the *Talevski* FNHRA provisions, the Court noted that "FNHRA offers an example [of Congressional rights-creating language] almost perfectly on point[,]" citing to § 1396r(c)(1)(A)(i)—also at issue in this case—as an example. *Id.* at 2235.

Defendants also raise various policy arguments, contending that finding a private right of action here would create an end-run around Indiana's MMA statutory scheme and its applicable standard of care, increase frivolous actions against nursing homes in federal court, and hold medical professionals to a vague standard imposed by a legislative body of non-experts. While there is certainly some truth to Defendants' concerns, at least at this stage, policy arguments do not sway the Court when the law is clear. "It is emphatically the province and duty of the judicial department to say what the law is[,]" not what it should be. *Marbury v. Madison*, 5 U.S. 137, 177 (1803).

With all this in mind, the Court considers whether §§ 1396r(c)(1)(A)(v)(I) and 1396r(c)(1)(A)(i) of FNHRA confer § 1983-enforceable rights.

§§ 1396r(c)(1)(A)(i) and 1396r(c)(1)(A)(v)(I) state as follows:

**(c) Requirements relating to residents' rights**

  **(1) General rights**

    **(A) Specified rights**
A nursing facility must protect and promote the rights of each resident, including each of the following rights:

      **(i) Free choice**
The right to choose a personal attending physician, to be fully informed in advance about care and treatment, to be fully informed in advance of any changes in care or treatment that may affect the resident's well-being, and (except with

8

respect to a resident adjudged incompetent) to participate in planning care and treatment or changes in care and treatment.

### (v) Accommodation of needs
The right—
- **(I)** to reside and receive services with reasonable accommodation of individual needs and preferences, except where the health or safety of the individual or other residents would be endangered[.]

There is little doubt that these FNHRA provisions, much like the ones at issue in *Talevski*, contain "rights-creating, individual-centric language with an unmistakable focus on the benefited class." 599 U.S. at 183. The language of the provisions explicitly confers on nursing facility residents "each of the following rights:" as relevant here, "the right . . . to be fully informed in advance about care and treatment . . ." and "the right to reside and receive services with reasonable accommodation of individuals needs[.]" 42 U.S.C. § 1396r(c)(1)(A). Defendants are hard-pressed to distinguish the provisions at issue here from those discussed in *Talevski,* likely because there are few distinguishing factors; the Court concludes that, under *Talevski* and *Gonzaga*, §§ 1396r(c)(1)(A)(i) and 1396r(c)(1)(A)(v)(I) confer § 1983-enforceable rights.

Now, the question becomes whether White has alleged sufficient facts to raise a reasonable inference that Defendants violated these FNHRA provisions. White includes a slew of allegations, (Second Am. Compl. ¶ 39(a-o)), that restate language from the statute and the corresponding sections of the Code of Federal Regulations; however, these allegations are devoid of any factual support. "[A] plaintiff armed with nothing more than conclusions[]" does not meet Rule 8's pleading standard. *Iqbal*, 556 U.S at 678–79.

9

In this case, the facts alleged indicate that Defendant Clinton House was made aware of Longster's susceptibility to UTIs but failed to appropriately change her, causing Longster to suffer from a serious rash on her labia and, eventually, UTI-induced sepsis and death. There are no facts from which the Court may infer that Longster was deprived of her "right to choose a personal attending physician, to be fully informed in advance about care and treatment, to be fully informed in advance of any changes in care or treatment that may affect [her] well-being, and . . . to participate in planning care and treatment or changes in care and treatment." 42 U.S.C. § 1396r(c)(1)(A)(i). There is, however, an indication that Longster did not "reside and receive services with reasonable accommodation of [her] individual needs and preferences;" namely, being changed often and appropriately due to UTI proneness. 42 U.S.C. § 1396r(c)(1)(A)(v)(I). Thus, White has succeeded, at this stage, in stating a claim for relief only under § 1396r(c)(1)(A)(v)(I) of the FNHRA.

As noted, White makes conclusory allegations that the Defendants violated various sections of the Code of Federal Regulations, including 42 C.F.R. §§ 483.12, 483.15, 483.20, 483.25, 483.30, 483.75. In general, "regulations, if valid and reasonable, authoritatively construe the statute itself, and it is therefore meaningless to talk about a separate cause of action to enforce the regulations apart from the statute." *Alexander v. Sandoval*, 532 U.S. 275, 284 (2001) (citations omitted). "Language in a regulation may invoke a private right of action that Congress through statutory text created, but it may not create a right that Congress has not." *Id.* at 291. It is also the case, however, "that the private right of action to enforce" one part

of a statute "does not include a private right to enforce [all] regulations" construing the statute. *Id.* at 286. White has stated a claim for relief under § 1396r(c)(1)(A)(v)(I)); so, only regulations expounding on and stemming from the "independent force" of this provision may be enforced against the Defendants. *Id.*

For starters, only 42 C.F.R. §§ 483.10, 483.12, and 483.15, the sections on "Residents Rights," "Freedom from abuse, neglect, and exploitation," and "Admission, transfer, and discharge rights," invoke the private rights of action conferred by 42 U.S.C. § 1396r(c).[2] The remainder of the provisions cited by White do not construe rights granted by Congress under 42 U.S.C. § 1396r(c); rather, they lay out "requirements that an institution must meet in order to qualify to participate as a Skilled Nursing Facility in the Medicare program, and as a nursing facility in the Medicaid program." 42 C.F.R. § 483.1(b).

42 C.F.R. § 482.10(e) explains that "[t]he resident has a right to be treated with respect and dignity," including "the right to reside and receive services in the facility with reasonable accommodation of resident needs and preferences." This reiterates § 1396r(c)(1)(A)(v)(I)).

42 C.F.R. § 483.12 explains that "the resident has the right to be free from . . . neglect," which the code clarifies "includes, *but is not limited to,* freedom from corporal punishment, involuntary seclusion, and any physical or chemical restraint."

---

[2] For the limited purpose of analyzing the applicability of the C.F.R., the Court reads the Supreme Court's decision in *Talevski* broadly, as finding a private right of action conferred by 42 U.S.C. § 1396r(c). Nevertheless, this order should be construed as finding a private right of action conferred by §§ 1396r(c)(1)(A)(i), albeit not successfully pleaded in this case, and 1396r(c)(1)(A)(v)(I), and those provisions alone.

11

(emphasis added). It is a fair interpretation of Longster's right to "reasonable accommodation[s]" that she be free from "neglect." While there are no facts alleged indicating that Longster suffered any of the aforementioned forms of abuse, the code defines "neglect" as "the failure of the facility, its employees or service providers to provide goods and services to a resident that are necessary to avoid physical harm, pain, mental anguish, or emotional distress." 42 C.F.R. § 483.2. Failing to change Longster such that she suffers a rash with excoriation of her labia resulting in the removal of dead skin tissue, and a UTI that leads to her death, certainly meets the definition of neglect.

Beyond these parts of the code, the Court cannot identify, and White does not specifically allege, any other provisions that construe 42 U.S.C. § 1396r(c)(1)(A)(v)(I)'s right to reasonable accommodation.

*ii.     Standing*

Defendants argue that 1) White lacks standing to bring this suit on Longster's behalf; and 2) White lacks standing to sue on her own behalf.

On the first contention, Defendants point out that, in the pleadings, White alleges she is "in the process of being appointed as the Administrator of the Estate of Iris Longster;" but in Indiana, "actions to recover the personal estate or its value must be brought by the executor or administrator, and not by the heirs, legatees, or distributees." (Second Am. Compl. ¶ 7, ECF No. 50); (Br. Supp. Mot. Dismiss. 24, ECF No. 60) (quoting *Inlow v. Henderson, Daily, Withrow & Devoe*, 787 N.E.2d 385, 394 (Ind. Ct. App. 2003)). In response, White claims that her complaint contains an

12

error, and she was appointed as the administrator of her mother's estate on April 17, 2024, prior to filing this suit on May 20, 2024; White attaches an entry from the state court proceedings evidencing her appointment. (*See* Br. Opp'n Mot. Dismiss, Ex. 1, ECF No. 65.) Defendants, though not disputing the date of the appointment, retort that White's "complaint may not be amended by the briefs in opposition to a motion to dismiss[.]" (Reply Br. Supp. Mot. Dismiss 13, ECF No. 67) (quoting *Thomason v. Nachtrieb*, 888 F.2d 1202, 1205 (7th Cir. 1989)). While the Defendants' recitation of the law is correct, "[i]t's well established that judges may take judicial notice of matters of public record . . . [including] public court documents and proceedings when considering a 12(b)(6) motion." *Fosnight v. Jones*, 41 F.4th 916, 922 (7th Cir. 2022). Absent evidence to the contrary, the Court takes judicial notice of White's appointment as personal representative of Iris Longster's estate on April 17, 2024, in Clinton Circuit County case number 12C01-2404-EU-000029—*In Re: the Estate of Iris J. Longster*. The Court concludes that White has standing to bring this suit on behalf of Longster's estate.

White does not appear to challenge the Defendants' position that she herself has not been harmed by the Defendants, so she lacks standing to bring this suit on her own behalf. The Court agrees that no facts have been alleged indicating that White has suffered an "injury in-fact" at the hands of the Defendants sufficient to confer standing; thus, the Court concludes that White lacks standing to bring this suit on her own behalf. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).

    *iii.*    *Statute of Limitations*

Finally, Defendants argue that several incidents underlying Plaintiff's § 1983 claim are barred by the statute of limitations. "A § 1983 action is subject to the statute of limitations governing personal injury claims in the state where the alleged injury occurred." *Hondo, Inc. v. Sterling*, 21 F.3d 775, 778 (7th Cir. 1994). In Indiana, the applicable statute of limitations period is two years. *Id.*

White initiated this action on May 20, 2024, (ECF No 1), which stopped the statute of limitations running. *See Robinson v. Doe*, 272 F.3d 921, 922 (7th Cir. 2001) ("The statute of limitations in a suit based on federal law . . . stops running when the complaint is filed.") Although White filed two amended complaints, the factual allegations remained the same. The pleadings allege that Longster suffered falls at Clinton House on an unspecified date in 2021, February 6, 2022, April 16, 2022, June 6, 2022, and July 5, 2022; and she suffered a rash on her labia on an unspecified date in May of 2022.

Defendants argue that recovery for Longster's first three falls is barred by the statute of limitations; Defendants also contend that White fails to include a specific date in May of 2022 when Longster's rash developed because she knows the claim is time-barred. White does not substantively respond to Defendants' statute of limitations arguments, beyond alleging that the "fall[s] provide[] necessary context regarding Defendants' knowledge of Ms. Longster's needs and Defendants' failure to provide for those needs, and supports Plaintiff's allegations regarding other injuries Ms. Longster suffered." (Br. Opp'n Mot. Dismiss 19, ECF No. 65.)

The surviving claim in this case asserts Longster's right under 42 U.S.C. § 1396r(c)(1)(A)(v)(I) "to reside and receive services with reasonable accommodation of individual needs and preferences." While Longster suffered from a variety of pre-existing conditions, there are no factual allegations contained in the Second Amended Complaint indicating that Longster's falls were a result of Clinton House failing to reasonably accommodate her needs and/or preferences; nor are there allegations that the falls were a result of neglect. While Defendants' contentions concerning the untimeliness of some of the falls are well-taken, regardless of when the falls took place, White may not recover for them under the FNHRA.

As for the labia rash and excoriation, there is nothing to substantiate Defendants' claims that White is deliberately obfuscating the date on which the injury occurred. On a motion to dismiss, the Court must "construe the complaint in the light most favorable to the plaintiff . . . drawing all possible inferences in her favor." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). It is possible that, given the circumstances, there is a lack of certainty as to when Longster discovered, or could have reasonably discovered, the rash. *See Riddle v. Khan*, 168 N.E.3d 1017, 1023 (Ind. Ct. App. 2021) ("[A] cause of action for personal injury accrues, and the statute of limitations period begins to run, when the plaintiff knew or, in the exercise of ordinary diligence, could have discovered that an injury had been sustained as a result of the tortious act of another."). Still, White's lack of response on this point is curious; the Court reminds White of her duty of candor under Rule 11 and the threat of sanctions in the instance of a violation. Nevertheless, the Court concludes that, at

15

least at the pleading stage, trusting that counsel has complied with its duty of candor under Rule 11, recovery for the labia rash is not time-barred. If appropriate, Defendants may raise this argument again at the summary judgment stage once discovery has concluded.

## IV.    Conclusion

Defendants' Motion to Dismiss, (ECF No. 58), White's Second Amended Complaint is **granted in part** and **denied in part.** White's § 1983 claim on behalf of the estate of Iris Longster, brought for violations of 42 U.S.C. § 1396r(c)(1)(A)(v)(I), 42 C.F.R. §§ 483.10 and 483.12, may proceed for resolution. The remainder of White's claims are **dismissed**. White, in her individual capacity, is **dismissed** as a Plaintiff in this case.

Defendants' Motion to Dismiss, (ECF No. 24), an earlier version of White's complaint, is **denied as moot.**

**SO ORDERED.**

Date:   8/12/2025

JAMES R. SWEENEY II, CHIEF JUDGE
United States District Court
Southern District of Indiana

Distribution:

Ava Louise Caffarini
Johnson & Bell
caffarinia@jbltd.com

Robert Daniell
Smith Clinesmith, LLP
rdaniell@fightingelderabuse.com

Bradley Needham
Smith Clinesmith, LLP
bneedham@fightingelderabuse.com

Kamal Packer
Smith Clinesmith, LLP
kpacker@fightingelderabuse.com

Sammi L. Renken
Johnson & Bell
renkens@jbltd.com

Jacob Runyon
Smith Clinesmith, LLP
jacob@fightingelderabuse.com